**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DE'WAYNE G. THOMAS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BRIAN MILLER,<br><br>　　　　Defendant. | No. 1:15-cv-00727-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED AND PLAINTIFF'S MOTION TO COMPEL BE DENIED AS MOOT<br><br>(ECF Nos. 17, 22)<br><br>**FOURTEEN-DAY DEADLINE** |

　　　　Plaintiff De'Wayne G. Thomas is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This case proceeds against Defendant Brian Miller, the Pharmacy Supervisor at the CSP Corcoran Pharmacy, for deliberate indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(1)(B) and Local Rule 302.

　　　　Currently before the Court is Defendant's motion for summary judgment, filed on February 27, 2017. (ECF No. 22.)

**I.**

**RELEVANT HISTORY**

　　　　This action proceeds on the original complaint, filed on May 12, 2015. (ECF No. 1.) On April 29, 2016, Defendant filed an answer to the complaint. (ECF No. 14.) On May 4, 2016, a discovery and scheduling order was issued. (ECF No. 15.)

1

On December 1, 2016, Plaintiff filed a motion to compel, and Defendant filed an opposition on December 9, 2016.

As noted above, on February 27, 2017, Defendant filed the subject motion for summary judgment. (ECF No. 22.) On March 29, 2017, Plaintiff filed a statement of non-opposition. (ECF No. 23.) The Court finding no need for a reply brief or oral argument in this case, Defendant's motion for summary judgment is now deemed submitted for review. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.
### DISCUSSION

#### A. Summary of Complaint Allegations

Plaintiff alleges that he suffers from chronic severe asthma and nasal allergies. Plaintiff was prescribed several self-administered aerosol inhalers. Among these was Dulera and Xopenex. Plaintiff alleges that on July 2, 2014, Defendant refilled Plaintiff's prescription, which had a standing refill order. The order did not expire until December 11, 2014.

On September 10, 2014, Plaintiff noted that his inhaler was empty. On the same day, he filled out a Health Care Services Request form, asking for a refill of his Xopenex and Nasacort. Plaintiff was taken to the medical clinic for processing. The next day, Plaintiff began to experience symptoms of a "flare up," or minor asthma symptoms. (Compl. ¶ 12.) Plaintiff used the last two remaining inhalations that he was issued on July 2, 2014.

The next day, September 12, 2014, Plaintiff was notified that some medications were available for Plaintiff to pick up. While at the clinic, a nurse returned with only one of the requested medications. Plaintiff did not get the Xopenex. When Plaintiff asked the nurse, he was told that Defendant refused to refill the inhaler because it had not been 90 days since the last issue. Plaintiff alleges that he had a standing refill, and that his "reliance on his rescue inhaler had been well known to the defendant because the plaintiff had submitted other written medication refill requests." (Compl. ¶ 17.)

That night, Plaintiff suffered a "severe asthma attack."(Compl. ¶ 18.) Plaintiff's cellmate summoned help. Plaintiff was taken to the CSP Corcoran Emergency Room, then transported to Mercy Hospital in Bakersfield. Plaintiff was treated with intravenous steroids and bronchodilator therapy, and

admitted to the hospital. Plaintiff was eventually diagnosed with chronic obstructive pulmonary disease, and prescribed a third inhaler for daily use, in conjunction with Plaintiff's current prescription.

### B. Motion for Summary Judgment

Defendant brings a motion pursuant to Federal Rule of Civil Procedure 56 that there is no triable issue of fact in this case, and that he is entitled to summary judgment as a matter of law. Specifically, Defendant argues that the undisputed material facts shown that he was not deliberately indifferent to Plaintiff's serious medical needs, and he is entitled to qualified immunity.

1. <u>Undisputed Material Facts</u>[1]

1. Defendant Bryan Miller was previously employed by the California Department of Corrections and Rehabilitation ("CDCR") as a Pharmacist-in-Charge at Corcoran State Prison.

2. As a pharmacist, Defendant does not partake in the diagnosis and treatment of inmates of CDCR. Rather, an appropriate diagnosis is determined by the inmate's treating physician, who then makes a determination as to appropriate and proper medical care, which care can include the prescription of medications.

3. Plaintiff is a state inmate who, at all times relevant to the complaint, was incarcerated by CDCR at Corcoran State Prison.

4. Plaintiff is not a medical doctor.

5. Plaintiff has no training in medicine.

6. Plaintiff has been diagnosed with asthma since childhood, and that was his diagnosis on September 12, 2014.

7. Prior to September 12, 2014, Plaintiff had never been diagnosed with Chronic Obstructive Pulmonary Disease (COPD).

8. Defendant's role as a pharmacy supervisor did not provide him with an opportunity or duty to treat Plaintiff's asthma condition.

9. Plaintiff alleges that Defendant refused to refill a prescription for medication (asthma

---

[1] Separate Statement of Undisputed Facts in Support of Defendant Bryan Miller's Motion for Summary Judgment. (ECF No. 22-3.)

4

1  rescue inhaler Xopenex) on September 12, 2014, and that Defendant allegedly knew was needed to
2  treat Plaintiff's asthma condition.

3    10.    Plaintiff alleges that his refill was refused by Defendant on September 12, 2014,
4  because "it hadn't been 90-days since the plaintiff's last issued asthma rescue inhaler was given to
5  him," which comment was communicated to Plaintiff by LVN Thacker.

6    11.    Inmates request prescription refills by submitting a Health Care Services Request Form,
7  also known as a 7362 Form.

8    12.    The 7362 Form is processed by nursing staff (without review or input from the
9  pharmacy), who will then input the request, if approved, into Medication Reconciliation, and send the
10 processed form to Medical Records for scanning. Pharmacy does not have access to the form until
11 after Medical Records has scanned the document (after it has been processed).

12    13.    Once in Medical Reconciliation, the refill request goes into the pharmacy workflow
13 queue, which in 2014 was monitored by the Central Fill Pharmacy Facility in Sacramento for CDCR
14 facilities. The medication refill request was then pushed from the workflow queue to the batch queue
15 for filling during local (onsite) pharmacy hours Monday through Friday. Here, the local pharmacy
16 staff (in most instances) are seeing the refill request for the first time.

17    14.    Once prescriptions are refilled, they are delivered by pharmacy to nursing staff for
18 distribution to inmates.

19    15.    Xopenex inhalers, as well as all prescription medications, are only to be taken as
20 directed by a physician, which directions are printed on the label issued with the prescription.
21 Generally, the treating physician will direct a patient to take a certain number of puffs per a certain
22 number of hours as needed based on the inmate's diagnosis, which again, is made by the inmate's
23 treating physician.

24    16.    The CDCR formulary includes the list of drug products approved by the Systemwide
25 Pharmacy and Therapeutics (P&T) Committee for prescribing within California Correctional Health
26 Care Services (CCHCS). The P&T Committee, who has the exclusive authority to add or delete drugs
27 from the formulary and to set use criteria, periodically reviews drug products and usage on the list
28 based on current evidence-based clinical practices, guidelines, safety, and pharmacoeconomics.

Treating physicians at CDCR facilities are to follow the use criteria included in the formulary.

17. Pursuant to the formulary guidelines, inmates receiving asthma protocol Xopenex are provided the following instruction which is printed on every single prescription label accompanying the dispense: ASTHMA RESCUE INHALER - NOT FOR DAILY USE. IF ASTHMA FLARES USE 2 PUFFS BY MOUTH EVERY SIX HOURS AS NEEDED. TALK TO YOUR DOCTOR IF USING MORE THAN TWICE WEEKLY. THIS INHALER SHOULD LAST AT LEAST 90 DAYS. 1 for 1 exchange "Request Refill" **KOP** (emphasis in original).

18. Formulary guidelines are not set by the individual treating physicians, nor by any individual pharmacy staff member. If there is deviation from the standard sig code or use criteria, the treating physician is required by the CCHCS Drug Formulary to submit a NonFormulary for approval from the Facility Medical Authority (the Chief Medical Executive or designee), for medical indications.

19. Consistent with Formulary guidelines, physician approval is required for an early refill of Xopenex.

20. The policy that requires physician approval for early Xopenex refills in place at California prisons considers that Xopenex is a controlled substance that can be deadly when used in excess, and can also foretell life threatening lung condition that requires treatment beyond Xopenex.

21. Because physician approval is required for an early refill of Xopenex, it cannot be ordered for ad-lib refills upon Plaintiff's request.

22. Defendant was not responsible for the policy in place that required physician approval before early refills of Xopenex. That policy had been made and promulgated by facility medical leadership in the interest of patient safety.

23. Plaintiff submitted his 7362 Form with his refill request on September 10, 2014, which form stated: "Please refill the following medications: Xopenex asthma inhaler; and Nasacort allergy nasal inhaler."

24. Plaintiffs 7362 Form does not communicate any sense of urgency or dire necessity.

25. Plaintiff's 7362 Form was processed by nursing staff on September 12, 2014. The nurse notation dated 9/12/14 reports under A (assessment) that requested medications are "refilled."

26. The processed request was then sent to pharmacy for processing, on September 12, 2014 (a Friday).

27. In September 2014, CSP pharmacy hours were Monday through Friday.

28. In 2014, CCHCS prescribing procedures for non-urgent medication refills was two business days from the time of notification to the local pharmacy. With rare exceptions, non-urgent medication refills would not be refilled on the same day they were received by pharmacy.

29. Defendant was not scheduled to work and did not work on September 12, 2014, as he was then a 10-hour employee working Monday through Thursday, and was off every Friday, Saturday, and Sunday.

30. Defendant did not have any personal involvement whatsoever in the processing of Inmate Thomas' prescription refill request on September 12, 2014.

31. LVN Thacker did not have any conversation with Defendant regarding the prescription refills requested by Plaintiff on September 12, 2014, or on any other day. She has never had a conversation with Defendant, about Plaintiff or otherwise.

32. During his interaction with LVN Thacker on September 12, 2014, Plaintiff did not say that he was in any respiratory distress.

33. During his interaction with LVN Thacker on September 12, 2014, Plaintiff did not say that he was in any urgent need for a refill of his Xopenex inhaler.

34. During his interaction with LVN Thacker on September 12, 2014, Plaintiff did not exhibit any signs of respiratory distress, which signs can include shortness of breath, flaring of the nostrils, and difficulty speaking. Rather, he was able to walk away from the interaction on his own without any apparent difficulty.

35. Per Manifest Tracking the prescription at issue was filled and sent out by the CSP pharmacy on September 15, 2014 (the first business day following September 12, 2014). It was then distributed to Plaintiff on September 18, 2014 when he returned to CSP from an outside hospital.

36. Plaintiff was instructed to seek medical attention for exacerbations of asthma causing him distress more than two times in one week.

37. At all times, Plaintiff had the option of seeking medical attention for worsening asthma

symptoms.

38. Plaintiff did not seek medical attention for his worsening asthma conditions which he alleges began on September 11, 2014.

39. Late on the evening of September 14, 2014, Plaintiff was taken to T.T.A. (Triage and Treatment Area) for an exacerbation of his asthma and sent to an outside hospital for further care.

40. Because Plaintiff's asthma condition had been deteriorating (he was found to have asthma mixed with infections (purulent) bronchitis and COPD that was not adequately treated with Xopenex alone), having Xopenex on hand would not have likely prevented Plaintiff's trip to the hospital, and his best treatment was probably in the emergency clinic and at the hospital.

41. The subsequent diagnosis of Plaintiff's COPD diagnosis and access to more frequent Xopenex inhaler refills did not prevent a further hospitalization in August 2015.

42. At no time did Defendant disregard any significant risk of further injury or pain to Plaintiff.

43. At no time did Defendant knowingly or intentionally cause Plaintiff to experience any pain, suffering, or injury of any kind.

2. <u>Defendant's Arguments</u>

As a threshold issue, Defendant argues that Plaintiff cannot show Defendant personally participated in any alleged deprivation of Plaintiff's rights, and therefore Defendant cannot be liable as a matter of law. Specifically, Defendant asserts that the evidence shows that he was not at work and was not involved in the refill-handling that Plaintiff complains about, and that he had no contact with Plaintiff or the nurse who interacted with Plaintiff on September 12, 2014. Therefore, Defendant argues that he could not have the requisite state of mind to constitute deliberate indifference. Plaintiff cannot show that Defendant was aware of any excessive risk to Plaintiffs health, that Plaintiff suffered injury as a result of any actions or omissions on Defendant's part, or that Defendant knowingly or intentionally cause Plaintiff to experience any pain, suffering, or injury of any kind.

Moreover, Defendant asserts that even if he had been present and involved in the events at issue, the evidence shows that he is a pharmacist who is not responsible for Plaintiff's diagnosis, medical care, or any of the policies in place for the safe prescription and distribution of medications to

Plaintiff. Thus, he could not prescribe, discontinue, or otherwise alter the frequency of Plaintiff's prescription without an order from a medical doctor or another senior medical officer with prescription authority. And, Defendant further argues that he cannot be held liable for the decisions or conduct of some other CDCR employee, to the extent Plaintiff is asserting that argument.

Defendant also argues that, putting aside Defendant's complete lack of involvement in the processing of the refill request, the allegation that Plaintiff was refused a prescription refill on September 12, 2014 does not meet the standard for a claim of deliberate indifference. Defendant asserts that the evidence shows, rather than being refused, Plaintiff's refill request was processed on September 12, 2014, in accordance with policies that allowed for a two-business day turnaround for non-urgent requests. Plaintiff did not communicate any urgency in the refill request, nor did he seek medical attention for his worsening conditions until they were at a critical stage. Plaintiff's statements on the form do not indicate that Plaintiff needed treatment immediately nor do they express that he was in an acute state. Therefore, there was no act or omission on the part of anyone that could support a claim for deliberate indifference against Defendant, or anyone else.

Finally, Defendant argues that Plaintiff cannot show any resulting further significant injury, or any injury here. Defendant asserts that the evidence shows that having Xopenex on hand would not have likely prevented Plaintiff's trip to the hospital, and that Plaintiff's best treatment was probably in the emergency clinic and at the hospital, which is the care he received. Because it must be shown that the prison official's act or failure to act actually caused medical harm to the prisoner, Defendant asserts that Plaintiff's claim must fail as a matter of law for this additional reason.

3.   Plaintiff's Statement of Non-Opposition

In response to Defendant's motion, Plaintiff filed a statement of non-opposition. (ECF No. 23.) Plaintiff stated that he had carefully read and considered the evidence submitted in support of Defendant's motion, and found that "there is no point in opposing Defendant's motion." (Id. at 2-3.) Accordingly, Plaintiff stated that he "will respectfully agree with the granting of Miller's motion." (Id. at 3.)

///

///

### 4. Analysis

The Court finds that Defendant's arguments are supported by the undisputed evidence and applicable law in this case, and that summary judgment should be granted in Defendant's favor on Plaintiff's Eighth Amendment deliberate indifference claim. First, Defendant has shown that Plaintiff cannot establish any triable issue of fact as to Defendant's personal involvement in the alleged violation here. "Liability under section 1983 arises only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)). Plaintiff's theory of liability is predicated on his allegations that Defendant was aware of serious medical need for a rescue inhaler, Xopenex, but nevertheless denied the refill for that medical because it had not been 90 days since the last issue. However, the undisputed evidence is that Plaintiff submitted his refill request on September 10, 2014, it was processed by the nursing staff on September 12, 2014, and then sent to the pharmacy that same day, when Defendant was not working. Nor did Defendant have any conversation with the nurse who discussed the prescription refill with Plaintiff on September 12, 2014 or with Plaintiff. Thus, it is not genuinely disputed that Defendant had no persona involvement in processing, refusing, or otherwise denying or delaying Plaintiff's refill request. As a result, Plaintiff cannot show that Defendant took any actions in "in conscious disregard" of a serious risk to Plaintiff's health, as required to establish liability against Defendant here. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 839 (1994)).

Further, Defendant has submitted substantial evidence that even if he had been involved in the refill processing, he would have had no authority or capability of providing the refill the same day it was sent to the pharmacy to be filled. In fact, the undisputed evidence is that the prescription for Xopenex was not refused, but was in fact approved and merely was not ready for pickup on September 12, 2014 when Plaintiff came to retrieve his medications. Instead, it was processed in the regular course under standard policies, as there was no sign that it was urgently needed, nor any authorization for urgent processing. Finally, the undisputed evidence is that Plaintiff's asthma condition was deteriorating due to other medical complications which could not be addressed with Xopenex alone, that Xopenex would not have prevented his asthma attack or hospitalization, and that the best

treatment for him was the hospitalization itself. Thus, there is no evidence in the record to support Plaintiff's theory that Defendant was deliberately indifferent to Plaintiff's serious medical need for Xopenex by denying a refill request, or that the failure for Plaintiff to receive his refill on September 12, 2014, and instead receive it some days later when he returned from the hospital, caused any harm or injury to him. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (a prisoner must show acts or omissions by the defendant sufficiently harmful to evidence deliberate indifference to serious medical needs); see also Smith v. Schneckcloth, 414 F.2d 680, 681 (9th Cir. 1969) (plaintiff must show a "tangible residual injury" resulting from the failure or refusal to provide urgently needed medical care). For these reasons, the Court recommends that Defendant's motion for summary judgment be granted due to the failure of Plaintiff to raise any genuine issue of material fact, and because the undisputed evidence shows Defendant is not liable here.

Having found that Plaintiff has not shown any triable issue with regard to his Eighth Amendment deliberate indifference claim against Defendant, the Court does not find it necessary to reach Defendant's alternative argument that he is entitled to qualified immunity here. In addition, Plaintiff's pending motion to compel is rendered moot and should be denied.

## IV.

## CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment, filed February 27, 2017 (ECF No. 22), be GRANTED; and

2. Plaintiff's pending motion to compel be denied as MOOT.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time

///

///

1  may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir.
2  2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4  IT IS SO ORDERED.

5  Dated:    **March 31, 2017**

6  UNITED STATES MAGISTRATE JUDGE